```
                     UNITED STATES DISTRICT COURT
                    CENTRAL DISTRICT OF CALIFORNIA
                           WESTERN DIVISION


ROSEMARY DAVIS, o.b.o      )   No. CV 13-06776-VBK
JAMIE DAVIS,               )
                           )   MEMORANDUM OPINION
             Plaintiff,    )   AND ORDER
                           )
     v.                    )   (Social Security Case)
                           )
CAROLYN W. COLVIN, Acting  )
Commissioner of Social     )
Security,                  )
                           )
             Defendant.    )
                           )
_____)
```

This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits. Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge. The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the Administrative Record ("AR") before the Commissioner. The parties have filed the Joint Stipulation ("JS"), and the Commissioner has filed the certified AR.

Plaintiff raises the following issues:

1. Whether the Administrative Law Judge ("ALJ") properly considered the opinions of Dr. Lindsay Reder, M.D. about Plaintiff's disability beginning in March 2011;
2. Whether the ALJ properly considered Plaintiff's credibility; and
3. Whether the ALJ properly considered the testimony of Plaintiff's wife.

(JS at 3.)

This Memorandum Opinion will constitute the Court's findings of fact and conclusions of law. After reviewing the matter, the Court concludes that for the reasons set forth, the decision of the Commissioner must be reversed and the matter remanded.

**I**

**THE ALJ PROPERLY CONSIDERED THE OPINIONS OF DR. LINDSAY REDER**

Shortly after the issuance of an unfavorable hearing Decision, Plaintiff died, and his widow, Rosemary Davis, was substituted as Plaintiff on his behalf. (AR 7-8.) As suggested by the parties, the Court will reference Jamie Davis, the decedent, as Plaintiff.

In his Decision (AR 14-25), the ALJ determined that at Step Two of the sequential evaluation process, Plaintiff has the following severe impairments: cancer of the supraglottis, status post-chemotherapy and radiation; hypertension; hypothyroidism; chronic Hepatitis B and C infection; obesity; anxiety disorder NOS; borderline intellectual functioning; and a personality disorder with anti-social traits. (AR 16.)

Plaintiff has a long treatment history, which the ALJ summarized (AR 20-22), and which Plaintiff's counsel has exhaustively discussed in her portion of the JS.

After reviewing the evidence, and conducting a hearing, at which testimony was taken from Plaintiff (who was represented by counsel), his wife, and a vocational expert ("VE"), the ALJ assessed a residual functional capacity ("RFC") of light work, avoidance of extreme cold and heat, fumes, odors, dust, gasses, and poor ventilation, and an ability to perform simple work. (AR 19.)

Plaintiff was first seen by Dr. Reder at LAC-USC on July 17, 2011. (AR 504.) He visited Dr. Reder again on October 4, 2011 (AR 509-511); October 18, 2011 (AR 512); and November 9, 2011 (AR 515-517). Dr. Reder prepared a report of this examination which contained the following statement:

> "Disability March 2011 - March 2013. Patient cannot be exposed to dust, chemicals, or strenuous activity, his breathing limits his ability to walk long distances."

(AR 517.)

It is the above statement of Dr. Reder which is the focus of Plaintiff's first issue. Plaintiff asserts that the ALJ erred in his assessment of Dr. Reder's opinion, in particular, the ALJ's statement in the Decision that,

> "To the extent it [Dr. Reder's opinion] is consistent with the assessments of the consultative internist and State Agency medical consultant, I accept the doctor assessment. To the extent it can be interpreted as inconsistent I give it less weight because the doctor does not quantify the

3

limitation on walking."
(AR 22.)

Plaintiff makes several vigorous arguments concerning this issue. First, he asserts that because his condition had deteriorated after he received a consultative examination ("CE") from Dr. Rodriguez on September 28, 2010, and after the State Agency Physician reviewed records, and further, because neither of these doctors had the benefit of Dr. Reder's examinations and conclusions, that Dr. Reder essentially provided an uncontradicted opinion which can only be rejected, according to law, for "clear and convincing" reasons. As a secondary argument, Plaintiff states that even if Dr. Reder's opinion is viewed as conflicting with the opinions of these other doctors, one of which is based on independent examination, still, there is an absence of "specific and legitimate" reasons in the Decision to reject Dr. Reder's conclusion. Finally, Plaintiff argues that the ALJ was obligated to contact Dr. Reder, or do some further development of the record consistent with regulations, in a situation such as this, where there is, assertedly, insufficient and/or inconsistent evidence.

A careful review of the record, however, does not support Plaintiff's interpretation. Certainly, the ALJ was aware that there had been some deterioration as to aspects of Plaintiff's physical condition. For example, in the Decision, the ALJ noted that, "Given the longitudinal notes, it appears that the [Plaintiff's] throat pain, while occurring since chemotherapy and radiation, has intensified only recently." (AR 20.)

The Court finds it significant that at the hearing, the ALJ specifically incorporated Dr. Reder's statement into questions posed

4

to the VE. In particular, with regard to Dr. Reder's assertion that Plaintiff's breathing limited his ability to walk long distances, the VE interpreted that as permitting an ability to walk for only two hours out of an eight-hour workday. Given that limitation, the VE eliminated one of the alternate jobs identified at Step Five, cafeteria attendant, but noted that the other two jobs, described as production assembler and cashier II, are "stationary," and can be performed by Plaintiff. (AR 63.)

Plaintiff challenges this testimony, and the conclusions reached by the ALJ, based on his interpretation that Dr. Reder's preclusion of "strenuous activity" likewise would preclude Plaintiff from jobs which require light exertion. Plaintiff argues that "strenuous activity involves more than walking ..." (AR 17.) Plaintiff also asserts that "Light exertional activity does not permit mere standing without exertion." (JS at 17, citing, generally, SSR 83-10.) SSR 83-10 does not, effectively, stand for the proposition proposed by Plaintiff. In describing "light" work, this Regulation states, in pertinent part, the following:

> "A job is also in this category when it involves sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls, which require greater exertion than in sedentary work ... Relatively few unskilled light jobs are performed in a seated position."

Thus, the Court does not view Plaintiff's interpretation of the meaning of light work in relationship to requirements of "strenuous" activity as precluding Plaintiff from having an RFC which permits light work, and certainly, in this litigation, the Court must only

determine whether the ALJ's conclusion is supported by substantial evidence or if it is based on legal error. See Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995).

For the foregoing reasons, the Court does not assess error with regard to the ALJ's assessment of the opinions of Dr. Reder.

## II

### **THE ALJ DID NOT PROPERLY ASSESS PLAINTIFF'S CREDIBILITY AS TO SUBJECTIVE SYMPTOMS**

The ALJ depreciated Plaintiff's credibility with regard to subjective symptoms (and to any limitations beyond those set forth in the determined RFC), based on their being unsupported by the objective evidence of record; that the medical evidence of record demonstrated an improvement in his condition along with numerous rejections by Plaintiff of recommended treatment; Plaintiff's work history; and his status as a convicted criminal. (AR 19-21.) For the following reasons, the Court agrees with Plaintiff that the ALJ improperly depreciated his credibility based on evidence in the record.

The law is clear that an ALJ must provide "specific, clear and convincing" reasons to reject excess pain and symptom testimony. See Taylor v. Astrue, 659 F.3d 1228, 1234 (9th Cir. 2011).

The first stated reason (AR 19) is that the "objective evidence" was found to be consistent with the RFC but inconsistent with Plaintiff's allegations "that he is unable to perform any work activity." As Plaintiff correctly points out, that is the wrong standard. It is not a comparison of whether a claimant's description of pain and symptoms is consistent with an inability to perform any work activity, but whether work activities are limited based on such

symptoms. In addition, much of the "objective evidence" cited by the ALJ went back to periods of time before August 6, 2010, the relevant commencement period for SSI benefits. (See AR at 19.) At the time of the February 2012 hearing before the ALJ, Plaintiff was awaiting surgery to provide relief for his breathing. He spent most of his time in bed. (AR 58.) It is correct, as the ALJ observed, that Plaintiff had previously informed his physicians that he felt sufficiently well to forego surgery; however, that was not the case at the time of the hearing. Certainly, there is no dispute in the record that Plaintiff's physicians had recommended surgery for his breathing problems. The fact that Plaintiff had declined surgery does not seem to be a factor that impacts on his credibility, but only his resistance to surgery. That might not be surprising in view of the fact that in January 2008, while Plaintiff was undergoing a biopsy of a throat lesion which later proved to be cancerous, the lesion ruptured, Plaintiff lost his ability to breathe, and an emergency tracheotomy was performed. (AR 282, 284, 294.) This might be viewed as a sufficient basis for an individual to be "gun shy" of further surgery in the same area of his body. The Court will further agree with Plaintiff that his previous unwillingness to undergo surgery, despite substantial evidence of ongoing problems and pain, does not detract from his credibility. It is not as if Plaintiff did not seek treatment; indeed, there is evidence in the record of numerous instances in which Plaintiff sought emergency room care for throat pain (see, e.g., March 10, 2011, at AR 543-552, 555-556); reported pain level between 5/10 and 10/10 (AR 549); was diagnosed with difficulty swallowing (AR 550); was given narcotic medication for severe pain (AR 546, 550); was found to have "rough" speech with increased throat pain (AR 553); was determined to

have only part of his airway open (AR 495-496); was prescribed morphine sulfate for pain, and sought refills (AR 488-493); visited the emergency room to get refills of Vicodin and morphine for pain (AR 560-561, 570-573); reported difficulty swallowing (AR 574); and finally, was seen on several occasions in 2011 by Dr. Reder, who recommended surgery for these issues.

The ALJ also depreciated Plaintiff's credibility because of his determination that Plaintiff's "overall treatment history" was inconsistent with his pain allegations. (AR 21). The Court finds this statement to be somewhat baffling, in view of the record of treatment which Plaintiff has received. Indeed, the ALJ concluded that Plaintiff's condition "appears managed with conservative care." In the Court's view, the record does not substantiate that conclusion at all. Furthermore, the ALJ relied upon a typed report to conclude that Plaintiff's medications do not cause side effects. (AR 21, citing Disability Report - Appeals, at AR 269.) This conclusion, however, was provided without any acknowledgment of extensive testimony provided by Plaintiff at the hearing that his medications may cause him to fall asleep. (AR 47, 49. "The morphine just puts me to sleep.")

The next stated reason was that Plaintiff's "reported daily activities are inconsistent with his alleged degree of impairment." (AR 21.) In this regard, the ALJ cited statements from Plaintiff and his wife for the conclusion "that he was generally able to tend to his personal care needs and get along with others, including authority figures ... He is also able to handle money, stress and changes in routine." (Id.) Most of these reasons pertain to mental issues, not physical ones. Further, Plaintiff's own report about his daily activities provides no apparent support for the ALJ's conclusion. It

1 is worthwhile to quote what Plaintiff himself wrote in his Function
2 Report:

> "I get up take my breathing treatment wash up eat breakfast lay back down watch TV, take another breathing treatment have lunch lay back down get up a 3:00 oclock [sic] sit outside for one hour Take another breathing treatment eat dinner watch TV till eight oclock [sic] put on my CPAP - machine for sleeping."

(AR 219)

The report of Plaintiff's wife, similarly, describes severe limitations in Plaintiff's activities of daily living ("ADL"). (AR 241-242.) With regard even to feeding himself, Plaintiff testified that his wife puts the food in a blender, and he consumes it through a straw, which he admitted that he can hold. (AR 48-49.)

All in all, the Court rejects any reliance upon the evidence in the record as to Plaintiff's ADL as a supportable basis to depreciate his credibility.

Finally, the ALJ's observation that Plaintiff's credibility is depreciated because he has a criminal record "showing a disregard to societal norms" does not merit substantial discussion, because it is not supportable. (See AR 21, citing AR 457.) The only fact the ALJ relied on was that Plaintiff went to prison in 2007 and was released in 2011. (Id.) If the ALJ's basis for credibility assessment was to be generally accepted, then any person who has a status as a convicted criminal, or spent time in prison, would be viewed as not credible, per se. The Court need not delve further into the issue, but will observe that there is absolutely nothing in this record to indicate

that Plaintiff was convicted a crime of moral turpitude, which might, under certain circumstances, form a basis for depreciation of credibility. (See case citations at JS 34.) Based on this record, however, it was not a supportable reason for depreciating Plaintiff's credibility.

Based on the foregoing, the Court concludes that this matter must be remanded for a reassessment of Plaintiff's credibility as to subjective symptoms. Further, while the parties have not briefed the third issue, concerning the ALJ's depreciation or rejection of the information provided by Plaintiff's wife, that discussion was subsumed within the second issue, and the Court does not consider that it was abandoned in this litigation. On remand, evidence provided by Plaintiff's wife will be considered, along with all evidence in the record, in the reevaluation of Plaintiff's credibility as it may impact on his RFC.

For the foregoing reasons, this matter will be remanded for further hearing consistent with this Memorandum Opinion.

**IT IS SO ORDERED**.

DATED: March 24, 2014                    /s/
                                         VICTOR B. KENTON
                                         UNITED STATES MAGISTRATE JUDGE